## INGE v. ELLIS.

## McCRACKEN v. SAME.

### Nos. 1057, 1058.

Court of Appeal of Louisiana. First Circuit.

Dec. 6, 1932.

J. C. Hollingsworth, of New Orleans, and B. R. Miller, of Baton Rouge, for appellant.

Daspit & Huckabay, of Baton Rouge, for appellees.

MOUTON, J.

March 26, 1931, a collision occurred between an auto driven by plaintiff Zebulon Inge, and one by defendant, Wilford S. Ellis.

Plaintiff was injured, as also was Shirly S. McCracken, his guest at the time.

The two cases were consolidated for trial, which resulted in a judgment in favor of Inge for $973.40; and one for McCracken in the sum of $200, with legal interest on both judgments from judicial demand.

Defendant appeals, and the two plaintiffs have filed their answer thereto, asking for an increase in the amounts decreed below.

The accident occurred about 10 in the morning on the public highway near Denham Springs, a town situated between Baton Rouge and Hammond.

Edith Ferguson, a colored woman, was driving a Chevrolet car eastward from Baton Rouge to Hammond. Inge, plaintiff, was driving a Buick auto behind Edith Ferguson, and another party by the name of Anderson was following the Buick auto driven by Inge.

Wilford Ellis, defendant, was driving a

Chevrolet car on that highway from Hammond towards Baton Rouge, and was therefore going westward and in a direction opposite to that of the car which Edith Ferguson, the colored woman, was driving.

The collision happened between the cars Edith Ferguson and Wilford Ellis were driving. When these two cars collided, the Ellis car went to the left across the highway and collided with the Buick Inge was driving, from which resulted the damages claimed herein by Inge and McCracken who was riding with him in the car.

The question presented is as to whether this collision between the Ferguson and Ellis Chevrolets was caused by the negligence or fault of the defendant, Ellis. His testimony is that he was going between 40 and 45 miles an hour, driving on a straight line, when suddenly Edith Ferguson drove her car to her left side across the center line of the roadway; that he slowed down his speed to about 25 miles, but that there was no room for him to pass to the right of the Ferguson car, and, in consequence, the collision was unavoidable.

He testifies that his brakes were in good condition; that upon striking the Ferguson car he tried to stop his car, and succeeded in stopping it when he got to the ditch on the other side of the road, at a distance of approximately seventy-five feet.

The proof shows that after the accident the Ferguson car was found near the center line of the roadway. The evidence of Anderson, who was driving about 50 or 60 feet behind the Inge Buick, and who could see, as he testifies, the center line of the highway, is, that Edith Ferguson, just before the collision occurred, was driving on her right-hand side of that line.

The testimony of Inge is to the same effect.

Counsel for defendant contends that Anderson had also collided with the Inge car, had damaged it, and should not be believed because he had an interest in establishing a case against defendant so as to save himself from a damage suit by Inge.

The proof shows clearly that the damage caused by the Anderson car was to the top of the Inge car; was so slight and trivial that there is no ground for the inference counsel desires to draw against the credibility of Anderson.

Anderson's testimony and that of Inge shows that at or about the time of the impact between the Ellis and Ferguson cars, the latter was south of the center line of that highway and on the right-hand side of Edith Ferguson, the driver.

The fact that it was found standing near that center line, or perhaps on it, sustains the evidence of Anderson and Inge, because, had the Ferguson car been across that line

when struck, as claimed by Ellis, it would have been shoved in the direction it was going, and would have come at rest somewhere, if not considerably, to the north of that center line. It is also somewhat hard to understand, if Ellis had not, at the time of the impact, been going to his left, why his car should have gone to its left, across that highway, stopping, according to the testimony of Ellis, about seventy-five feet from the point of collision.

Ellis says it was cloudy that morning, but there had been no rain. Most all of the other witnesses testify that it had rained; that the weather was misty at the time of the accident; and they all say that the road was wet and slippery. In addition to that, it was shown that signs in large letters had been posted east and west of the point of the accident, warning travelers on that highway that the road was dangerous, and to drive slow.

Ellis lived in Denham Springs, had frequently traveled on that road, knew it had been repaired, and from the side he was coming, as testified to by him, was aware of the sign there, although he says he could not give the words the "sign contains." He says: "I couldn't swear to the other one out at Millerville." He certainly knew that one sign was posted on that road, and it mattered little whether he ignored the existence of the other or not.

He testified, at first, that he had slackened his speed to about twenty-five miles an hour before colliding with the Ferguson car, although admitting he was traveling between forty and forty-five just prior thereto. After so testifying, the following question was put to him:

"Q. You were driving forty or forty-five miles an hour just prior to the accident? A. Yes at the time I was driving forty the accident occurred."

Here Ellis says when he was "driving forty the accident occurred." Following that statement, he says when the Ferguson car hit his car, they said there was a sign there; but adds: "I never did see it." Again his testimony is not in accord with his first statement, where he testifies that he knew of a sign on that highway but could not give the words "it contains."

Such testimony is rather misleading and does not commend itself for truthfulness, and most probably so impressed the trial court. We feel confident that Ellis, a resident of Denham Springs, a native of Livingston parish, and who had often traveled that road, if by any possibility did not know that these signs were there, he certainly knew the condition of the road, could not have failed to see it was wet and slippery, and should not have been traveling at the rate of forty or forty-five miles, according to his testimony, and, according to the other witnesses, at forty-five or fifty.

Under the existing conditions, he was traveling too fast, and from that cause, or from carelessness or negligence, ran into the Ferguson car, across the way, and into the Inge Buick.

It is claimed by Ellis that his car had come to a stop, and was run into by the Inge car.

Cline, who was riding with Anderson, a disinterested witness, and who certainly could not anticipate any damage suit from Inge, testifies that Ellis ran into the Inge car which had come almost to a "dead stop,". and knocked the Inge car around to the right-hand side of the road. Inge says his car had come to a stop when the Ellis Chevrolet ran into it, and so testify the other witnesses, or that the Inge car was barely moving at that time.

Inge testifies that when the Ellis car collided with the Ferguson car, he was going at about thirty or thirty-five miles an hour, and was at a distance of about fifty or sixty feet from the Ferguson Chevrolet. The testimony of Inge in reference to the rate of speed he was traveling and the distance he kept his car from the Ferguson car is supported by the testimony of Cline and Anderson, who were trailing the Inge car, as hereinabove explained.

This speed of thirty or thirty-five miles an hour was not excessive, and, even if it were, had nothing to do with, or had no connection with, the collision that occurred between the Ellis and Ferguson cars, and which was caused by the fault or negligence of Ellis.

It is shown that as soon as the collision occurred, Inge drove to his right side of the road and applied his brakes, coming to a stop or nearly so, when his car was struck by the Ellis Chevrolet. He did what any prudent driver would have done under the circumstances, and cannot be charged with negligence or want of the exercise of ordinary care. Inge not being at fault, none could be imputed to McCracken, his guest, which he was, as appears from the evidence; and even if Inge and McCracken were, at the time, engaged in a joint venture or common enterprise, as neither Inge nor McCracken was at fault, they are both entitled to recover damages for the injuries suffered by them as a result of the collision caused by the negligence, carelessness, or fault of Ellis, defendant herein.

Counsel for defendant has called our attention repeatedly to the fact that Inge had, after the accident, called on defendant, Wilford Ellis, and had advised him to acknowledge his individual responsibility for the collision, because otherwise no damages could be recovered by any one, which we understand was intended to include a claim by W. Ellis, brother of defendant, who had also suffered injuries in the accident. The giving of such advice by Inge was unquestionably reprehensible, and, if the solution of the case depended solely on his testimony, this court would not be inclined to accept it as true; nor do we think it would have been so accepted by the district judge.

The version of the occurrence given by Inge is, however, supported by Cline, a disinterested witness; also by the testimony of Anderson, likewise disinterested, as above stated; and by that of McCracken, who was riding with Inge, whose evidence, we take occasion to say here, impressed us as being perfectly truthful. Adding to that testimony the physical facts to which we have referred, the proof shows the cause of the damage to have resulted from the fault of Ellis, and to which Inge did not contribute in any way whatsoever. He cannot be deprived of his right to recover for what he has suffered because of his subsequent conduct in suggesting that defendant assume responsibility for the accident. Both plaintiffs are entitled to damages.

### Quantum.

There are no reasons that we can find why the judgments appealed from should be either increased or decreased; they are therefore affirmed, with cost.